**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GREAT NORTHERN INSURANCE CO.,    : | |
|     Plaintiff,    : | |
|      : | |
| v.    : | 3:08-cv-511 (WWE) |
|      : | |
| EMERSON ELECTRIC CO. ET AL.,    : | |
|     Defendants.    : | |

## **MEMORANDUM OF DECISION**

Defendants Emerson Electric Co. ("Emerson") and W. W. Grainger, Inc. ("Grainger") move for summary judgment in this action filed by plaintiff Great Northern Insurance Co. ("Great Northern"). For the following reasons, Emerson and Grainger's motion for summary judgment will be denied.

## **BACKGROUND**

Great Northern insured a home owned by Edward and Keiley Fuller in Darien, Connecticut. While the home was undergoing renovation, the Fullers stored clothing, linens, and other combustible materials in the attic on top of a 30-inch whole house fan built into the attic floor. The fan was not equipped with a guard or cover, so the clothing was in direct contact with the fan blades. The Fullers placed tape over the fan switch on the second floor so that it would not be turned on. However, on June 15, 2006, the switch was turned on and a fire resulted.

Emerson and Grainger manufactured and sold the fan and its motor as separate parts to electricians and other contractors, not the general public. The fan was installed in approximately 1985, and the motor was apparently replaced in approximately 1992.

The person who replaced the motor is unknown. After the fire, it was discovered that the wrong type of motor had been used. The motor should have had thermal protection, impedance protection, or an overload device, but it lacked those features.

The following warning was given on the motor used with the fan: "Motor contains no thermal protector. Separate overcurrent protection must be provided to prevent burnout and possible fire hazard from overload or stalled motor." In addition, the box containing the motor had a label indicating the lack of thermal protection, and the installation instructions discussed the importance of thermal protection. The fan was not marked with a warning, but the installation instructions included a general warning to follow electrical and safety codes and to "guard all moving parts." However, as noted above, the fan was not equipped with a guard or cover.

Great Northern paid the Fullers nearly $2 million for the damage from the fire. Great Northern then filed this subrogation action against Emerson and Grainger, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The complaint alleges one count of product liability pursuant to Conn. Gen. Stat. § 52-572m et seq.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material

2

factual issue genuinely in dispute. American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual dispute exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the nonmoving party submits evidence that is "merely colorable," there is insufficient legal opposition to the motion for summary judgment. Anderson, 477 U.S. at 249.

Emerson and Grainger first argue that Great Northern's complaint is barred by Conn. Gen. Stat. § 52-577a, which provides in relevant part that a product liability claim must be filed within three years of the injury and no later than ten years after defendants last possessed or controlled the product. The statute contains an exception to the ten-year rule if plaintiff can prove that the injury occurred during the "useful safe life of the product." § 52-577a(c).

There are several factors to be considered in determining whether a product's useful safe life has expired: (1) wear and tear or deterioration from natural causes; (2) climatic and other local conditions; (3) the user's policy on repairs; (4) representations and warnings made by the seller about the product's useful safe life; and (5) modifications or alterations made to the product. § 52-577a(c). Those factors are guidelines to assist in making a factual finding as to useful safe life. Moran v. Eastern Equip. Sales, Inc., 76 Conn. App. 137, 142 (2003).

In the present case, it is undisputed that Emerson and Grainger parted with possession and control of the fan and motor more than ten years before the fire. The focus therefore shifts to the "useful safe life" exception. Emerson and Grainger argue that the useful safe life of the fan and motor must have expired instantly upon the Fullers' decision to store clothing on top of the fan and to tape the fan switch in the off position. However, Emerson and Grainger fail to cite any law supporting their argument.

Great Northern has presented evidence indicating that the useful safe life of the fan and motor had not expired at the time of the fire. For example, Great Northern's electrical engineering expert, Dr. J. Duncan Glover, opines that the fan and motor were within their useful safe life because they had been used sparingly and had not malfunctioned during the year leading up to the fire. Because there is a question of fact as to the useful safe life of the fan and motor, the Court leaves Great Northern to its proof. Summary judgment for Emerson and Grainger is not warranted on the basis of § 52-577a.

Emerson and Grainger next argue that the warnings accompanying the fan and motor were adequate as a matter of law. They emphasize that the fan and motor were sold to electricians who should be knowledgeable about thermal protection. Emerson and Grainger contend that Great Northern cannot prove causation because there is no evidence that different warnings would have prevented the fire. Emerson and Grainger further argue that the fan did not need to be equipped with a guard or cover because it was manufactured for use in an uninhabited attic. Finally, Emerson and Grainger claim that they are entitled to summary judgment because the Fullers misused the fan in a

4

way that no manufacturer could have anticipated.

In opposition, Great Northern asserts that the fan should have had a warning to use only a thermally protected motor. The parties agree that the fan's warnings did not directly address the issue of thermal protection. Only the motor's warnings addressed that issue. Great Northern points out that the person who purchased and installed the incorrect motor is unknown, so Emerson and Grainger should not be able to rely on the assumption that a knowledgeable electrician must have been involved. Great Northern also claims that the fan was defective because it was sold separately without a motor and guard, thus permitting a situation in which the wrong motor could be used and a guard could be absent. Great Northern suggests that the fan could have been designed to fit only thermally protected motors. Finally, Great Northern argues that the Fullers' actions were reasonably foreseeable because combustible material may be stored in an attic.

The Court agrees with Great Northern that there are disputed issues of material fact regarding the adequacy of the fan's warnings and the fan's alleged defects. The fan's warnings referred to electrical and safety codes but not specifically thermal protection. A jury will need to determine whether the fan's general warnings were sufficient or whether a specific thermal protection warning should have been used. Furthermore, Great Northern's theory of liability goes beyond the warnings to the issues whether the fan always should have been sold with a motor and guard rather than as separate parts or whether the fan should have been designed to fit only the proper type of motor. Although the Fullers' actions may have been unwise, the issues raised by Great Northern make the cause of the fire a question of fact for the jury.

## CONCLUSION

Emerson and Grainger's motion for summary judgment (Doc. #58) is DENIED.

Dated at Bridgeport, Connecticut, this 23rd day of August, 2011.

                                           /s/
                               Warren W. Eginton
                               Senior United States District Judge